IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 01-cv-02315-LTB-CBS

HARVEY SENDER et al.,

Plaintiffs,

v.

WILLIAM JEFFREY MANN et al.,

Defendants.

**FREEBORN REPLY IN SUPPORT OF SUMMARY JUDGMENT**

Plaintiff's Response offers ***no dispute*** as to ***all materials facts***, including the fact that not one Lifeblood noteholder ever met, spoke with or communicated in any way with any Freeborn Defendant. The only fact in dispute is when Sabian and Poyfair learned for the first time that Lifeblood had offered promissory notes. However, even then, Plaintiff does not offer evidence that Messrs. Sabian and Poyfair knew of the Lifeblood notes prior to October 1998 such that they should bear any liability. Instead, the sum total of Plaintiff's "evidence" is that:

1. Mr. Sabian knew in 1997 that "people in Florida had been raising funds by selling short-term promissory notes." Pltf's Resp. ("Resp."), pp. 2-3, ¶ 1, citing Exh. 1 at 76:10-77:2.

2. In 1997, a broker, not a noteholder, talked to Mr. Sabian about notes in general, but ***not*** about Lifeblood notes. Resp., Exh. 4 at 83:22-84:15.

3. Mr. Poyfair signed a cover letter to an April 1998 invoice for one hour of an associate's time researching North Carolina regulations on subpoenas. *Id.*, Exh. 8. The subpoena itself requests information and says nothing about any charges or illegal activity. *Id.*

4. In August 1998, before Mr. Sabian knew anything about Lifeblood notes, Mr. Sabian was consulted on possible work for Cardiac Care Corporation. *Id.*, Exh. 2 at 133:9-17.

Plaintiff offers not one additional fact showing that the Freeborn Defendants knew prior to

October 1998 that Lifeblood was selling notes – not one witness; not one document. Without that knowledge, there is nothing to tie these defendants to any scheme to defraud investors. Plaintiff has no evidence proving the Freeborn Defendants knew not only that Lifeblood was selling notes, but that it was perpetuating a fraud. There is no witness or document showing that the Freeborn Defendants had knowledge, motive or opportunity to participate in a criminal enterprise. Plaintiff's presentation of a mere scintilla of evidence is insufficient to create a genuine issue of fact. *Herrick v. Garvey*, 298 F.3d 1184, 1190 (10th Cir. 2002). Plaintiff has failed to present facts such that a reasonable jury could find in his favor.[1] Summary judgment should enter.[2]

## LEGAL ARGUMENT

Plaintiff does not dispute the Freeborn Defendants' recitation of the burden of proof and elements applicable to each claim. Plaintiff failed to meet his burden of proving each element.

**A.    Plaintiff has not met his burden to establish standing.**

Plaintiff has admitted that he is acting as a statutory trustee in the liquidation trust claims. *See* Opening Brief, p. 6. Plaintiff cannot escape the explicit language in the Plan documents that posits with the Liquidation Trustee the sole discretion and authority over both Trusts. *See id.* p. 7. In that role, Plaintiff lacks standing to pursue the claims asserted in this case.

**1.    Plaintiff admits the Liquidation Trust claims are not property of the estate.**

Relying primarily on this Court's previous decision in *In re Porter McLeod*, Plaintiff asserts that his standing to pursue the Liquidation Trust claims derives from 11 U.S.C. § 544 which, he claims, authorizes a trustee to pursue any claims held by a judgment lien creditor –

---

[1] Plaintiff's other facts are either not supported by his record citations or are immaterial.

[2] According to Plaintiff's Response, the lynchpin of Plaintiff's case against the Freeborn Defendants is the $300,000 retainer. At best, Plaintiff's case boils down to one for fraudulent transfer– and nothing more.

- 3 -

including the tort claims asserted here. Plaintiff misapplies the *Porter McLeod* decision. In that case, the Court held that because the parties did not dispute the alleged tort claims were "property of the estate," the trustee had standing to assert those claims as a putative judgment creditor. 231 B.R. at 792. In *Porter McLeod*, there was no allegation that the debtor entities were "sham" corporations. Here, in contrast, there is **no dispute** the Lifeblood Entities were "sham" corporations. *See, e.g.*, Resp., p. 9; Opening Brief ("Op. Br."), p. 8. Because "sham" corporations have no cognizable claims of their own, the alleged tort claims are not "property of the estate" and the Liquidation Trustee has nothing to pursue. *See, e.g., Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118-19 (2d Cir. 1991) (collecting cases).

Plaintiff admits that the Liquidation Trustee, in part, "seeks to redress ... injuries that are common to individual creditors." Resp., p. 8. Such claims are clearly not "property of the estate." *Feltman v. Prudential Bache Secs.*, 122 B.R. 466, 473-74 (S.D. Fla. 1990). Thus, only the individual creditor can enforce the direct claims.

  2.  <u>The Opt-In Trust claims, Plaintiff cannot overcome the *Caplin* factors.</u>

Plaintiff does not overcome the restrictions of *Caplin*. The purported assignments to Plaintiff do not confer upon him "property of the estate," but rather assign to him each individual's claims. *See* Resp., Exh. 28, ¶ 1. Pursuant to the Opt-In Trust Agreement, each assignor expects to receive a pro-rata share in any proceeds recovered. *Id.*, ¶ 2; Resp., Exh. 27, pp. 8-9.[3] Thus, the same concerns at issue in *Williams v. Cal. 1st Bank*, 859 F.2d 664, 666-67 (9th Cir. 1988), namely a trustee circumventing Bankruptcy Code restrictions by trying to recover property not belonging to the estate, are at issue here.

With respect to the second *Caplin* factor, Plaintiff argues that *in pari delicto* will not apply

---

[3] *In re Bogdan*, 414 F.3d 507, 511-12 (4th Cir. 2005), cited in Pltf's Resp. at p. 10, is inapposite here, because the assignors in that case had relinquished all rights to any direct recovery.

- 3 -

because of an "adverse interest" exception. However, that exception does not apply where, like here, the corporate entities were mere instrumentalities of the bad actor. *Vail Nat'l Bank v. Finkelman*, 800 P.2d 1342, 1345 (Colo. App. 1990). It is undisputed that the Lifeblood Entities acted only through Jeffrey Mann.

As to the likelihood of inconsistent results, Plaintiff makes the nonsensical point that "noteholder suits . . . against Lifeblood Entities have no bearing on Plaintiff's claims against the Freeborn Defendants." Resp., p. 12. Clearly, any recovery of damages by any individual noteholder, be it in a suit against Mann individually or a Lifeblood Entity, has a bearing on that noteholder's right to recover against the Freeborn Defendants. Each noteholder is entitled to only one recovery. The undisputed facts show some individuals who executed assignments have filed suit and already recovered. Op. Br., p. 8. The *Caplin* court's fears are reality.

Finally, despite Plaintiff's statement to the contrary, the Freeborn Defendants clearly dispute the effectiveness of each assignor's purported assignment of claims to the Opt-In Trustee. *See* Op. Br., pp. 8-9. Plaintiff offers no response to the individual states' laws that do not permit the assignment of claims for conspiracy, breach of fiduciary duty and fraud. Because individual states' public policies forbid assignment of individual tort claims, i.e. "personal" claims that belong to individuals, these states' public policies outweigh any interest of Colorado. At minimum, Plaintiff fails to prove that he has standing for each individual's claims.

B.  **Plaintiff has failed to show that an aiding and abetting fraud claim is cognizable.**

Like the Freeborn Defendants, Plaintiff has been unable to find any Colorado appellate authority recognizing an aiding and abetting fraud claim. Resp., p. 15.[4] This Court should decline to create a new cause of action that the Colorado courts have not approved.

---

[4] Plaintiff relies on *Porter McLeod* and *Holmes v. Young*, two cases that discuss only an aiding and abetting breach of fiduciary duty claim not aiding and abetting fraud, and *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Kozeny*, a case this Court is certainly familiar with, which describes a

*(Footnote cont'd on next page)*

- 5 -

**C.     Plaintiff has no evidence to support the elements of his aiding and abetting claims.**

    **1.     Plaintiff has no evidence of knowing participation.**

Plaintiff argues that the Court should impose aiding and abetting liability where Plaintiff alleges, at most, a general awareness by the Freeborn Defendants that Lifeblood was selling notes. This Court, however, has already held that anything less than actual knowledge is insufficient. *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1339 (D. Colo. 1997). Moreover, even if the Freeborn Defendants knew before October 1998 that the notes existed (they did not), there is nothing untoward about borrowing money by issuing notes. Knowledge of the notes' existence hardly equates to knowing participation in a Ponzi scheme.

    **2.     Plaintiff has no evidence of substantial assistance.**

Plaintiff does not dispute that this element must be strictly construed where attorneys are involved. Instead, he argues that by (1) disbursing $127,965 in funds from the firm's trust account for Mann's personal benefit; and (2) using some of the retainer to pay legal fees, the Freeborn Defendants "substantially assisted" Mann. Plaintiff's allegations, even if true, would not constitute "substantial assistance." Op. Br. at 12-13. "Substantial assistance" is a *large* amount of assistance. Plaintiff's expert acknowledges that $69,003 is the total amount Freeborn & Peters was paid. In the context of a $9.3 million fraud scheme and a $77 million damages claim, $69,003 in legal services and $127,965 in transfers cannot be characterized as substantial.

As numerous courts have recognized, aiding and abetting liability cannot be premised on the fact that legal services were rendered. Rather, the plaintiff must produce *evidence* that the lawyers knew of the fraud and had reason to participate. *Barker v. Henderson, Franklin, Starnes*

---

*(Footnote cont'd from previous page.)*

defendant's use of a corporate entity to "aid" in the commission of fraud, but the corporate entity was not a party to the litigation. Thus, there was no claim for aiding and abetting fraud.

& *Holt*, 797 F.2d 490, 496-97 (7th Cir. 1986). Here, the Freeborn Defendants received no compensation from the note sales, nor did they receive fees for rendering advice regarding the notes. The $69,003 that was billed represented such an insubstantial amount of revenue for Freeborn & Peters, a large national firm with 125 lawyers, that "it is inconceivable that they joined a venture to feather their nests by defrauding investors." *Id.* The Freeborn Defendants had nothing to gain and everything to lose by participating in a Ponzi scheme. Indeed, Plaintiff's own expert concedes that they did not act with the requisite intent.

    3.    **Plaintiff has no evidence of damages caused by alleged aiding and abetting.**

Plaintiff does not dispute that no damages were caused by the alleged aiding and abetting.

**D.**    **Plaintiff has no clear and convincing evidence of a COCCA violation.**

    1.    **There is no evidence of participation in the conduct of an enterprise.**

Plaintiff fails to address the fact that, if the enterprise is Lifeblood, the Freeborn Defendants did not participate in the conduct of the enterprise. Instead, Plaintiff suggests that the enterprise is not Lifeblood, but the law firm itself. Resp., p. 18. This contention **precludes any liability under COCCA § 18-17-104(3)**, as the enterprise and the defendant **cannot** be the same entity for purposes of that section of COCCA. *Ferris v. Bakery, Confectionery & Tobacco Union, Local 26*, 867 P.2d 38, 46 (Colo. App. 1993); *Brannon v. Boatmen's First Nat. Bank of Okla.*, 153 F.3d 1144, 1146 (10th Cir. 1998) (RICO).

Moreover, Plaintiff's contention that the law firm is the "enterprise" **necessarily limits liability under § 18-17-104(1)(a) to $69,003**, the amount allegedly received and used by the firm as proceeds of racketeering. Colo. Rev. Stat. § 18-17-104(1)(a). *See also Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1150-51 (10th Cir. 1989) (plaintiff's damages must flow from use of racketeering income); *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 929 (5th Cir. 2002) (same). Given the only "racketeering income" arguably used or invested by the Freeborn

Defendants was $69,003, the Freeborn Defendants are entitled to partial summary adjudication limiting COCCA damages to $69,003. Fed. R. Civ. P. 56(d).

2. **Plaintiff has no clear and convincing evidence of intent.**

Plaintiff nowhere disputes that one cannot negligently commit a COCCA violation. The *only* evidence submitted to show intent are legal services that were completely proper. This is hardly clear and convincing evidence of criminal intent.

3. **Plaintiff has no evidence of a "pattern" of racketeering activity.**

Plaintiff tries to have it both ways. First, because Plaintiff cannot show that the Freeborn Defendants participated in the conduct of Lifeblood, he argues that the law firm is the enterprise. Then, in a complete about-face, Plaintiff argues that the Freeborn Defendants engaged in a pattern of racketeering activity to perpetuate Lifeblood's activities. The fact that the Freeborn Defendants did not participate in the conduct of Lifeblood is, however, *fatal* to Plaintiff's COCCA § 18-17-104(3) claim. *See People v. Chaussee*, 880 P.2d 749, 758 n.12 (Colo. 1994).

In addition, the facts simply do not support a COCCA claim. Plaintiff does not dispute that ***each defendant*** must have agreed to commit, or in fact have committed, two or more specified predicate crimes as part of his participation in the enterprise. The only "acts" Plaintiff points to, i.e., transferring funds from a trust account at a client's direction, drafting scripts for the purpose of disseminating consistent information, and, later, referring the principal of the company to a criminal lawyer, are not crimes. Moreover, Plaintiff has no evidence to contravene the conclusion reached by the criminal authorities, namely, that the scheme ended on October 13, 1998 (Wells) and September 30, 1998 (Mann). As a result, any acts that occurred *after* October 13, 1998 could not constitute a *predicate* act that occurred during the pendency of the scheme.

4. **No noteholders were damaged by any alleged predicate acts.**

As discussed in section E(1) *infra*, to the extent that Plaintiff could establish a claim under COCCA, his damages would be limited to $69,003. Plaintiff cannot, however, recover even this

- 7 -

amount, as he has failed to establish the requisite causal connection between use or investment of the $69,003 in income received by Freeborn & Peters and the damages alleged, namely, the noteholders' investments in the promissory notes. *Brooks v. Bank of Boulder*, 891 F. Supp. 1469 (D. Colo. 1995). Although Freeborn & Peters used retainer funds in the operation of the firm, that is insufficient to establish liability. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 779 n.6 (7th Cir. 1994). Because all of the investors purchased their notes before the alleged predicate acts occurred, Plaintiff has failed to show that any injury resulted from *each* predicate act. *Floyd v. Coors Brewing Co.*, 952 P.2d 797, 803 (Colo. App. 1997), *rev'd on other grounds*, 978 P.2d 663 (Colo. 1999).

Plaintiff attempts an end-run around his inability to show a causal connection by suggesting that, pursuant to § 18-17-104(4), the Freeborn Defendants are liable for all damages resulting from a conspiracy. To prevail on a COCCA conspiracy claim, however, Plaintiff first must establish that there was an *agreement* to a pattern of racketeering activity and an *agreement* to the statutorily proscribed conduct. *Brooks*, 891 F. Supp. at 1479. "Mere association with conspirators, even with knowledge of their involvement in a crime, is insufficient to prove participation in a conspiracy." *Id*. There is no evidence of any agreement by the Freeborn Defendants to assist in the commission of crimes.

E.   **Plaintiff has no evidence that the Freeborn Defendants participated in a conspiracy.**

Plaintiff does not dispute that, to the extent Mann was acting in his capacity as an officer of Lifeblood, the Freeborn Defendants could not have conspired as a matter of law. Instead, Plaintiff asserts that the Freeborn Defendants conspired to make personal payments to Mann from the $300,000 retainer. Plaintiff, however, points to no evidence of a meeting of the minds. The courts will not infer the agreement necessary to form a conspiracy; evidence of such an agreement must be presented by the plaintiff. *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995). Moreover, a party may not be held liable for civil conspiracy *for doing in a proper manner that which it had a*

*lawful right to do*. *Id.* The only "evidence" Plaintiff can even attempt to point to are the legitimate legal services that the Freeborn Defendants provided to Lifeblood. This, however, is not enough.

F.   **Plaintiff has no evidence that the Freeborn Defendants breached any duty.**

Expert testimony is necessary to establish the standards of professional conduct. *Kelton v. Ramsey*, 961 P.2d 569, 571 (Colo. App. 1998). Plaintiff has failed, however, to point to any expert standard of care testimony. And, the evidence shows that no duty was breached. Mann directed transfers of trust fund money as the representative of Lifeblood, and the Freeborn Defendants were not only unaware of any improper reason for the transfers but had a legal and ethical obligation to disburse unearned advanced fees on the client's request. In addition, Plaintiff has produced no evidence establishing a causal relationship between the Freeborn Defendants' conduct and the millions of dollars in damages he seeks. Importantly, Plaintiff's entire "damages" argument is that the trust fund money could have been used to repay creditors. Under this argument, the only injury that could have been caused by the alleged conduct is $300,000 – the total of all amounts either transmitted to the Freeborn Defendants or disbursed by them at their client's direction. At a minimum, then, partial summary adjudication should be entered that the maximum damages Plaintiff can recover is $300,000. Fed. R. Civ. P. 56(d).

G.   **Plaintiff has not proven any entitlement to punitive damages.**

Plaintiff contends the Freeborn & Peters trust account was used to launder the $300,000 retainer. Plaintiff has produced no ***evidence,*** let alone evidence showing beyond a reasonable doubt, that the Freeborn Defendants received or distributed the funds to perpetrate a fraud.

H.   **Plaintiff's statute of limitations argument contradicts his standing argument.**

Plaintiff relies on Bankruptcy Code sections when they suit his purposes and disregards them when they do not. For standing purposes, Plaintiff disclaims that the Liquidation Trust claims are brought pursuant to § 541 because those claims are barred by the doctrine of *in pari*

*delicto*. Yet, for statute of limitations purposes, Plaintiff invokes § 108(a)'s extension, even though this section applies only to nonbankruptcy pre-petition causes of action **belonging to the debtor**. *See In re Downtown Inv. Club III*, 89 B.R. 59, 65 (B.A.P. 9th Cir. 1988); *In re Dry Wall Supply, Inc.*, 111 B.R. 933, 935 n.2 (D. Colo. 1990). Plaintiff cannot have it both ways. He either asserts claims belonging to the debtor or not. If the former, Plaintiff lacks standing as a matter of law. If the latter, § 108(a) does not save Plaintiff's claims from being time-barred.

I.      **The Opt-In Trust claims are not timely.**

The Opt-In Trust claims are not saved by invoking equitable tolling or the discovery rule. Neither of those principles applies because the noteholders' awareness of the fraud triggers the statutory time period. *Grogan v. Taylor*, 877 P.2d 1374, 1379 (Colo. App. 1993), *rev'd on other grounds*, 900 P.2d 60 (Colo. 1995). *See also Yoder v. Honeywell Inc.*, 900 F. Supp. 240, 247 (D. Colo. 1995), *aff'd*, 104 F.3d 1215 (10th Cir. 1997). There is no dispute the noteholders' knew by November, 1998 they were injured by someone.

Dated this 8th day of February, 2006.

s/ Julie M. Walker
Julie M. Walker
Wheeler Trigg Kennedy LLP
1801 California Street, Suite 3600
Denver, CO  80202
Telephone:  (303) 244-1800
Fax:           (303) 244-1879
E-mail:       walker@wtklaw.com

**ATTORNEYS FOR DEFENDANTS FREEBORN & PETERS LLP, MICHAEL SABIAN, DARWIN J. POYFAIR**

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on February 8, 2006, I electronically filed the foregoing **FREEBORN DEFENDANTS' REPLY IN SUPPORT OF SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Ann H. Cisneros**
  acisneros@lindquist.com stoms@lindquist.com

- **Herbert Anthony Delap**
  cdelap@duffordbrown.com ccarlson@duffordbrown.com

- **Carolyn J. Fairless**
  fairless@wtklaw.com hart@wtklaw.com

- **David W. Furgason**
  dfurgason@duffordbrown.com ccarlson@duffordbrown.com

- **James R. Leone**
  jrleoneattorney@yahoo.com

- **Michael L. O'Donnell**
  odonnell@wtklaw.com pointer@wtklaw.com

- **John C. Smiley**
  jsmiley@lindquist.com stoms@lindquist.com

- **Julie M. Walker**
  walker@wtklaw.com mcguire@wtklaw.com

and deposited a true and correct copy in the United States Mail to the following non CM/ECF participant:

W. Jeffrey Mann
419 Abbeyridge Court
Ocoee, FL  34761

        s/   Julie M. Walker by Deborah McGuire
        Julie M. Walker
        Wheeler Trigg Kennedy LLP
        1801 California Street, Suite 3600
        Denver, CO  80202
        Telephone:  (303) 244-1800
        Fax:           (303) 244-1879
        E-mail:       walker@wtklaw.com

405752v3